244    SUPREME COURT OF WISCONSIN.    [Dec.

Gordon v. Ill. Cent. R. Co. 168 Wis. 244.

Gordon, Administrator, Respondent, vs. Illinois Central Railroad Company, Appellant.

*November 8—December 3, 1918.*

*Railroads: Collision at highway crossing: Failure to give statutory signals: Proximate cause of injury: Slight want of ordinary care by injured person: Look-and-listen rule: Questions for jury.*

1. Under sub. 6, sec. 1809, Stats. 1917,—providing that a recovery for personal injury or death caused by negligent omission of a railroad company to comply with the requirements of that section shall not be barred by a slight want of care on the part of the person injured or killed—there must be a corresponding relaxation of the rigid look-and-listen rule formerly applied to the traveler on a highway at a railroad crossing.

2. In an action for fatal injuries to plaintiff's intestate caused by collision between his automobile and defendant's train at a highway crossing, the evidence, showing, among other things, that as the deceased approached the crossing his view of the train was partially obstructed by trees, that the train was running at a high rate of speed, and that the statutory warnings of its approach were not given, is *held* to sustain findings by the jury that the failure to ring the bell and blow the whistle was a proximate cause of the injury and that the deceased was guilty of but a slight want of ordinary care.

3. There could be in such case no assumption that the deceased neither looked nor listened for the train; nor, the burden of proving that there was an absolute failure to look and listen being laid by the statute upon the defendant, was the evidence such that the jury was bound to find such absolute failure.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

On Sunday, June 24, 1917, at about 10 o'clock in the forenoon, one Thomas Gordon, Jr., then about twenty-eight years old, at a grade crossing in Dane county, between the stations of Basco and Belleville, was fatally injured by being struck by a north-bound train of defendant. The train approached this crossing from the south over an embankment twelve to fifteen feet high and extending for about

1,600 feet to the south.  The highway made the crossing at an inside angle of about thirty degrees, running from the northwest to the southeast.  On the side from which he approached, the northwest, there was an average upgrade of 5.6 per cent. for about 230 feet.  A fence or railing was placed on each side of the grade starting about twenty feet from the rail and extending down the grade for about 180 feet, with a space of about twenty feet between them, which space was occupied by the traveled track.  A large railroad sign, seven feet long by two feet high, with letters eight inches high, was placed on the railroad right of way on the opposite side of the track from which deceased was coming. Between the portion of the highway on which deceased was traveling and the railroad embankment there were trees scattered over the adjoining pasture along the south side of the highway up to within about fifty-five feet from the track.  There were open spaces at several intervals along the highway in a distance of over 300 feet as the traveler approached the railroad, through which spaces, the longest of which appeared to be about thirty-eight feet, a traveler could get an unobstructed view of an approaching train on the embankment.  For a space, however, starting at about fifty-five feet from the railroad track and extending back for about 100 feet the trees and foliage were so thick on the south side of the highway that the view of the approaching train was entirely obscured; between the fifty-five-foot point and one thirty-five feet from the track the view was partially obstructed, but for the last thirty-five feet approaching the track the view was clear.

The jury found by the special verdict in substance as follows: (1) there was a failure to exercise ordinary care in reference to the speed at which the engine was running at the time of the collision; (2) there was a failure to ring the engine bell during the approach of the train in the last eighty rods away from the highway crossing; (3) a failure to blow the whistle eighty rods from the crossing; (4) that the fail-

ure to ring the bell and blow the whistle as thus found was want of ordinary care; (5) that the injury to deceased was the natural and probable result of the want of ordinary care specified in the first and fourth questions; (6) that an injury should have been foreseen from such conduct; (7) that the deceased failed to exercise ordinary care in approaching and crossing the railroad track; (8) that the failure of the deceased to exercise such care was not more than a slight want of ordinary care.

By the eleventh question they assessed the money loss to the widow of the deceased at $4,375, and by the twelfth question assessed the sum of $600 for the physical and mental pain and anguish which the deceased suffered after his injury and up to the time of his death.

After motions by both parties the court directed a judgment upon such verdict for the amount thereof in favor of the plaintiff, and from that judgment defendant appeals.

For the appellant there was a brief by *Jones & Schubring* of Madison, and oral argument by *E. J. B. Schubring.*

*William Ryan* of Madison, for the respondent.

ESCHWEILER, J. Appellant urges that judgment should have been directed for the defendant in this case substantially on the following grounds: That the familiar rule so often repeated by the decisions of this court in former years, requiring travelers on the highway, when approaching a railroad crossing, to look and listen before crossing, is still in full force and vigor, and that under the facts in this case there was such evident failure on the part of the deceased to make any effort to comply with that rule that, as a matter of law, there was more than a slight want of ordinary care; and further, that in any event the evidence would not legitimately support the conclusion of the jury that the proximate cause of the injury was the failure to ring the bell or blow the whistle.

Unquestionably under the evidence before us in this case

3]            AUGUST TERM, 1918.            247

Gordon v. Ill. Cent. R. Co. 168 Wis. 244.

the deceased did not exercise the ordinary care that the rules of law and the dictates of prudence alike require of a traveler who, knowing of the presence of a railroad track and its rapidly rushing trains, goes upon such track to his injury. That such has been the rule of law in this state is too long and too well established to require any reference to former decisions.

The legislature, however, has within its undoubted province expressed itself upon the subject of highway and railroad crossings by not only providing by statute (sec. 1809 ·among others) precise methods by which railroad trains must give warning of their coming by ringing of the bell or blowing of the whistle, but in addition thereto provided by ch. 595, Laws 1907, a condition that, when an injury or death was caused by a failure on the part of the railroad to comply with any such statutory requirement, a slight want of ordinary care on the part of the traveler contributing to his injury should not bar a recovery. By amendment in 1909, ch. 332, the burden was placed upon the defendant in such case of proving that any want of ordinary care on the traveler's part was more than a slight want thereof. In 1911, by ch. 653, the term "want of care less than gross negligence" was substituted for "slight want of ordinary care," and in 1915 by ch. 437 the "gross negligence" clause was stricken out and the term "slight want of ordinary care" reinstated, and the statute became as it now stands, and under which the instant case was determined. So, manifestly, a reference to decisions of this court before the amendment above mentioned, or when the statutory requirements were different than as now found, are not helpful in the solution of problems arising under the present statutory provisions.

It is evident the legislature has now marked out a limited field within the field of what formerly was and still is recognized as that of "ordinary care" and designated the smaller field as that which covers situations where the triers of fact can say that, though there was a want of care, yet it was

not more than a slight want of the ordinary care required and expected of the great mass of mankind under similar circumstances.    It is a field as to which we shall not attempt the impossible task of offering any formula which will exactly define and prescribe its boundaries, but it must be left, like so many other questions that arise, to the good sense and judgment of those representatives of the great mass of mankind, the petit jurors.

With the legislative change as to the amount of care, lack of which will defeat an action for injury to the traveler on the highway at a railroad crossing, there must be a corresponding relaxation of the former rather rigid look-and-listen rule.    It is sufficient in this case to say that under the present law and the facts herein the trial court was right in his disposition of the case on defendant's motions after verdict in saying that there could be no assumption in this case that the deceased neither looked nor listened for the train, nor was the evidence such, the burden of proof being particularly laid upon defendant to show it, that the jury must find that there was an absolute failure to look and listen.

Under the evidence in this case we also are satisfied, as was the trial court, that the question was one for the jury's determination and they were within the rightful exercise of their powers in answering it as they did.    The testimony as to the partial obscuring of the railroad embankment as deceased passed along towards the crossing, the but momentary glimpses afforded of the oncoming train, the question as to whether it was within the range of vision at the precise moments that deceased passed such openings; the fact that there was testimony which the jurors had the right to believe that there was no substantial increase of speed over the ten to fifteen miles per hour the deceased appeared to be traveling in the last two or three hundred feet of his journey and the short space of time required to pass over the last fifty-five or thirty-five feet; the high rate of speed of the train; the failure to give the statutory warnings of its

approach—all presented a situation from which a jury might say that deceased failed to do that which the ordinary man ought to have done, but nevertheless that such failure to conform with such a standard was but slight. We cannot say that the trial court was clearly wrong in sustaining the verdict. This was not a situation from which the jury or court must say that the deceased knowingly raced with the train and his possible death, which would require now, as well as before the crossing statutes were amended, a denial of any right to recover.

The distinction is plain between this case and those relied upon by appellant of *O'Toole v. D., S. S. & A. R. Co.* 153 Wis. 461, 140 N. W. 293, and *Jay v. N. P. R. Co.* 162 Wis. 458, 156 N. W. 626. In the former the driver of a work team of horses drove ninety feet, with an unobstructed view of the track and with knowledge that a train was then due, and in the second case the injured person had unquestioned knowledge of the then approach of a train. The facts here bring it nearer the situation disclosed and the rulings made in *Wade v. C. & N. W. R. Co.* 146 Wis. 99, 130 N. W. 890, or *Swalm v. N. P. R. Co.* 143 Wis. 442, 128 N. W. 62.

What has been said on the main question involved sufficiently indicates our view of the situation under the statutes to dispose without further comment of the further contention made by defendant that in no event was the failure to ring the bell or blow the whistle a proximate cause of the injury. We are satisfied that the question was properly submitted to the jury in that respect and that the evidence supports the findings.

*By the Court.*—Judgment affirmed.